

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

F I L E D

2021- 7432

**STATE OF LOUISIANA**

2021 SEP 20  PM 1: 19

NO. _____

**SECTION**

DIVISION

CIVIL
DISTRICT COURT **SECTION 5**

**VELMA LEE THOMPSON**

**VERSUS**

**HUNTINGTON INGALLS INCORPORATED, ET AL**

FILED: _____

_____
DEPUTY CLERK

## PETITION FOR DAMAGES

TO THE HONORABLE CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA, AND THE JUDGES THEREOF:

1.      Made Petitioner herein is:

   **VELMA LEE THOMPSON**, an adult resident of Orleans Parish, State of Louisiana,

   who respectfully states the following:

2.      Made Defendants herein are:

   A.   **PREMISE/EMPLOYER DEFENDANTS**

   CHELSEY RICHARD NAPOLEON
   CLERK, CIVIL DISTRICT COURT
   CIVIL COURTS BUILDING
   421 LOYOLA AVENUE · ROOM 402
   NEW ORLEANS, LA 70112

   1.   **HUNTINGTON INGALLS, INCORPORATED**
        **(f/k/a Northrup Grumman Shipbuilding, Inc., f/k/a Northrup**
        **Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., f/k/a**
        **Avondale Shipyards, Inc., f/k/a Avondale Marine Ways, Inc.)**
        This defendant is being sued for negligence/premise/strict
        liability/employer liability.

   B.   **SUPPLIER/MANUFACTURER/SELLER/CONTRACTOR DEFENDANTS**

        2.   **UNION CARBIDE CORPORATION**
             This defendant is being sued as a seller/supplier/product liability/contractor
             defendant.

        3.   **TAYLOR-SEIDENBACH, INC.**
             A corporation duly organized, created, and existing under and by virtue of
             the laws of the state of Louisiana, with its principal place of business in New
             Orleans, Louisiana.
             This Defendant being sued as a seller/supplier/product liability/contractor
             defendant.

        4.   **CBS CORPORATION** (f/k/a Westinghouse Electric Corporation,
             f/k/a Westinghouse Electric & Manufacturing Company)
             This defendant is being sued as seller/supplier/product/manufacturer
             defendant.

VERIFIED

Jon Que Smith
9/21/2021

1

5.    **FOSTER WHEELER ENERGY CORPORATION**
      This Defendant is being sued as a seller/supplier/product/manufacturer
      defendant.

6.    **GENERAL ELECTRIC COMPANY**
      This defendant is being sued as seller/supplier/product/manufacturer
      defendant.

7.    **INTERNATIONAL PAPER COMPANY**
      **(individually and as successor by merger with Champion International**
      **Corporation, successor by merger with United States Plywood**
      **Corporation)**
      This defendant is being sued as seller/supplier/product/manufacturer
      defendant.

8.    **HOPEMAN BROTHERS, INC.**
      This defendant is being sued as seller/supplier/product/manufacturer
      defendant.

9.    **LIBERTY MUTUAL INSURANCE COMPANY**
      **(individually and as the insurer of Wayne Manufacturing Company)**
      This defendant is being sued as seller/supplier/product/manufacturer
      defendant.

3.    Velma Lee Thompson was diagnosed with malignant mesothelioma on or about June of
2021, which was caused by and a consequence of her exposures to asbestos as set forth herein. As
a direct and proximate result of the delictual conduct of the defendants, Plaintiff, Velma Lee
Thompson, has recently contracted asbestos-caused mesothelioma and has suffered physically,
financially, mentally, and emotionally.

4.    The defendant, Taylor-Seidenbach, Inc., is a domestic corporation with its registered office
located in Orleans Parish. Plaintiff was exposed to asbestos products, distributed and installed by
Taylor-Seidenbach, Inc. Plaintiff specifically alleges that these products, in combination with other
asbestos-containing products, caused his asbestos-related injuries.

5.    Plaintiff suffered household/secondary/para-occupational exposures to asbestos in her
family homes located in New Orleans, Louisiana. Accordingly, venue is proper in Orleans Parish
pursuant to La. Code of Civil Procedure Article 74 as the parish where the wrongful conduct
occurred and where the damages were sustained.

6.    Orleans Parish is a proper venue for this matter pursuant to Louisiana Code of Civil
Procedure Article 42 and 74 because the Defendant Taylor-Seidenbach is a domestic corporation
licensed to do business in this State and has designated their primary business office and/or primary
place of business in Louisiana as Orleans Parish, and because the exposure of Plaintiff originated
in Orleans Parish.

7.      Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries to Plaintiff

8.      The actions of each of the Defendants are a proximate cause of Plaintiff's injuries. As a result, all Defendants are jointly and solidarily liable for the damages caused by their combined actions.

9.      Each of the Defendants, including Taylor Seidenbach, Inc., contributed to Plaintiff's exposures as stated herein. Each of the defendants is liable in solido to the Plaintiff. Thus, venue proper for these defendants is proper for all defendants pursuant to Louisiana Code of Civil Procedure articles 42 and 73.

10.     The damages sought by the Plaintiff, exclusive of interest and costs, exceed the minimum jurisdictional limits of the court.

11.     Plaintiff specifically disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in, or on the grounds of, a federal enclave.  Plaintiff also disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any conduct, action, acts or omissions of any and all federal officers, or committed at the direction of an officer of the United States Government.

12.     During the 1950's through the 1970's, Plaintiff, Velma Lee Thompson, suffered household/secondary/para-occupational exposures to injurious levels of asbestos fibers brought home on the clothes and person of her father, Johhny Thompson, brothers, Johnny Coleman and Larry Thompson, and husband, Gralyn Ancar.  At various times between the 1950's through the 1970's, Johnny Thompson, Johnny Coleman, Larry Thompson, and Gralyn Ancar were all employed at Avondale Shipyards and carried home dangerous levels of asbestos fibers on their clothes, persons, and personal items.  While employed at Avondale Shipyards, Johnny Thompson, Johnny Coleman, Larry Thompson, and Gralyn Ancar used, handled, and/or were in the vicinity of others using and/or handling asbestos and/or asbestos-containing products and dangerously high levels of asbestos fibers escaped into the ambient air of the work place, resulting in exposure to such asbestos, asbestos contamination of clothes, and which asbestos fibers were subsequently carried home and resulted in exposure to Petitioner, Velma Lee Thompson.

13.     Petitioner, Velma Lee Thompson, was exposed to asbestos fibers through interaction in the family home with her father, Johhny Thompson, brothers, Johnny Coleman and Larry Thompson, and husband, Garlyn Ancar.  The above family members carried home asbestos fibers on their

3

clothes from their work at Avondale Shipyards. Plaintiff, Velma Lee Thompson, subsequently laundered and contacted the clothes brought home from her family members at Avondale Shipyards. As a result, Plaintiff breathed the asbestos dust carried home by her family members from Avondale Shipyards.

14.     As detailed above, Petitioner was exposed to asbestos products designed, manufactured, sold, supplied, used and/or maintained at these sites by the Defendants listed above.

15.     Before and during Velma Lee Thompson exposure periods, each of the defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, used, supplied and/or sold asbestos-containing products for use at, including but not limited to, each of the facilities, premises, and work sites listed above, from which the Plaintiff was exposed to asbestos-containing products, materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos".

16.     When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself as asbestos-related pleural disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

17.     Each of the defendants knew or should have known through industry and medical studies, the existence of which was unknown to the Plaintiff of the health hazards inherent in the asbestos-containing products they were selling and/or using. Instead of warning the Plaintiff, and the general public about these dangers, the defendants ignored or concealed such information, or condoned such concealment, in order to sell or use asbestos or asbestos-containing products to avoid litigation by those who were injured from asbestos inhalation.

18.     As a direct and proximate result of having inhaled, ingested, or otherwise been exposed to asbestos as described above, Velma Lee Thompson contracted asbestos-caused mesothelioma. Ms. Thompson was diagnosed with asbestos-caused mesothelioma on or about June 2021. The cause of Petitioner's mesothelioma was para-occupational exposure to asbestos.

19.     Because of the latency period between exposure to asbestos and the onset of cancer, and because of the concealment by some defendants of the causes and effects of exposure to asbestos, the Plaintiff did not know nor could he have reasonably known that Plaintiff's injuries were caused by his asbestos exposure until recently, which occurred less than one year prior to the filing of the

instant Petition for Damages. Further, Plaintiff only recently discovered her injuries, not more than one year preceding the filing of this Original Petition for Damages.

20.    Plaintiff was exposed to and inhaled or otherwise ingested significant quantities of asbestos, having neither knowledge or reason to believe that asbestos was dangerous.

## GENERAL NEGLIGENCE ALLEGATIONS- ALL DEFENDANTS

21.    On information and belief, all of the Defendants identified in paragraph 2 above were responsible to provide Plaintiff's father with warnings concerning hazardous conditions at their sites and/or their use of hazardous materials, and generally to provide Plaintiff and her father with safe premises in order to protect life health, safety, and welfare of Plaintiff, and had the following responsibilities:

A.    Inspection, approval, and supervision of these various premises for hazards and vices that may present a hazard to Plaintiff;

B.    To see that proper safety rules were adopted, promulgated, and enforced concerning the use and handling of hazardous materials that may present harm to people on the premises;

C.    To see that workers performed their duties pertaining to their work in a proper, safe and workmanlike manner so as not to present an unreasonable risk of harm to the workers, as well as Plaintiff;

D.    To see that the Defendants and their employees used safe and sound principles and practices in their work involving the use and storage of hazardous materials;

E.    To make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices involving the use and storage of hazardous materials;

F.    To keep abreast of state-of-the-art-knowledge, as it pertains to the dangers of asbestos inhalation, involving the use and storage of hazardous materials;

G.    To provide adequate warnings, safety equipment, ventilation, and breathing apparatus, where such was unnecessary, in order to prevent Plaintiff from being harmed by exposure to asbestos in the environment in which her father was required to be present;

H.    To make certain that Plaintiff's father, was provided a safe environment, free from excess asbestos dust inhalation and operations free from excess asbestos dust;

I.    To comply with applicable state and federal regulations regulating exposure to asbestos, including but not limited to, those regulations regulating exposure to asbestos, including

but not limited to, those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh/Healy Act and Occupational Safety and Health Act.

Not only did defendants have the duties and responsibilities set forth in the foregoing paragraph, but they did actually undertake on an operational basis to perform said duties and fulfill said responsibilities, and they negligently failed to carry out those undertakings and assumed duties in the manner asserted in the paragraph below, and on information and belief, Defendants knew of the dust laden atmosphere in which Plaintiff's family members worked and that asbestos contaminated persons and clothing would result in exposure to plaintiff, Velma Thompson. Defendants knew plaintiff's father, Johnny Thompson, brothers, Johnny Coleman and Larry Thompson, and husband, Garlyn Ancar were required to enter and work in dusty conditions which were damaging and dangerous to them and any other family member coming into contact with their work clothing. Specifically, defendant, Avondale Shipyards knew or should have known of the dangers to Plaintiff's health posed by her family members working in an atmosphere polluted with asbestos dust without proper protection or warnings. Avondale Shipyards did not take the required preventive measures to prevent employees from carrying home dangerous asbestos fibers on their clothes and person. Plaintiff alleges that all defendants knew or should have known that the asbestos related disease such as asbestosis, lung cancer, and mesothelioma could have been avoided by the use of adequate ventilation, warnings, packaging and safety equipment.

22.     On information and belief, Defendants negligently failed in the performance of their responsibilities and/or actual undertakings to provide safe premises and operations in the following particulars:

      A.     Failing to properly ventilate work areas;

      B.     Failing to warn or provide proper safety appliances, including but not limited to respirators, air-fed hoods, etc.;

      C.     Failure to institute safety procedures and plans for the adequate protection;

      D.     Failing to warn Plaintiff and other employees of the dangers posed by the polluted atmosphere in which he was required to work including, but not limited to the risk of asbestosis, pleural disease, lung cancer, mesothelioma, other cancers, and the carcinogenic effect of the risk of mesothelioma caused by asbestos exposure to persons from the handling and use of asbestos;

      E.     Failing to enforce applicable safety rules after such rules were actually adopted;

F.      Failing to keep abreast of the scientific and engineering knowledge regarding the dangers of, and protection against, the occupational exposure to asbestos;

G.      Failing to properly supervise operations;

H.      Failing to provide proper and safe laundry services to workers;

I.      Failure to prevent workers from taking asbestos dust home on their clothes;

J.      Commencing and continuation of operations which were under their control and supervision when they knew or should have known that such operations cause Plaintiff and his father to be exposed to asbestos dust, without protections;

K.      Failing to abide by applicable state and federal regulations regulating the premises' exposure to asbestos, including but not limited to, those regulations promulgated by the U. S. Department of Labor, pursuant to the Walsh/Healy Act and the Occupational Safety and Health Act;

L.      Failing to measure the levels of asbestos dust in the premises working environment.

23.     The negligence of these defendants was a substantial factor and contributed in causing damages to Plaintiff.

## NEGLIGENCE AND STRICT LIABILITY AGAINST MANUFACTURER/SELLER/SUPPLIER/CONTRACTOR DEFENDANTS

24.     The Defendants identified in Paragraph 2B above as manufacturers, sellers, contractors and/or suppliers of asbestos products were engaged in or materially participated in the business of manufacturing, or assisted in the manufacturing, or facilitating the manufacturing of asbestos products, or representing themselves as manufacturers of asbestos products, or are professional vendors of asbestos or asbestos-containing products, or as a contractor, which were expected to and did reach the Plaintiff's job sites causing Plaintiff to be exposed to them.

25.     The products manufactured, distributed, supplied, sold and/or used by these defendants were defective, and unreasonably dangerous per se to Petitioner, who was an intended and foreseeable user and bystander that was exposed to these products.  These defects include, without limitation, the following:

A.      the manufacture, sale, supply and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

B.      manufacture, sale, supply and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to those who would be

foreseeably exposed to them doing the laundry and having contact with the clothing worn by his father in the Petitioner's father's trade;

      C.     lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

      D.     lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

      E.     failure of defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

      F.     failure to test or adequately test these products for defects or hazards that they could present to the intended or foreseeable users and bystanders;

      G.     failure to truthfully report or adequately report the results of product testing, and medical studies associated with foreseeable hazards of these products by intended or foreseeable users and bystanders;

      H.     failure to prevent Petitioner's father rom taking dusty work clothes home;

      I.     failure to properly design these products where the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

      J.     defects in the composition and construction of these products;

      K.     failure to recall these products manufactured, sold and supplied;

      L.     failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

      M.     over-warranting the safety of these products;

      N.     are liable to Plaintiff in strict liability for things in their guard, possession, custody or control, pursuant to article 2317 of the Louisiana Civil Code that have caused harm to Plaintiff.

26.    The defective conditions of defendants' products and fault, as noted above, are a cause of Plaintiff's injuries and damages complained of herein.

27.    Plaintiff also alleges that each and every one of the foregoing defendants were also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Plaintiff's injuries.

**NEGLIGENCE ACTION AGAINST SHIPYARD DEFENDANT,**
**HUNTINGTON INGALLS INCORPORATED (f/k/a Northrup Grumman**
**Shipbuilding, Inc., f/k/a Northrup Grumman Ship Systems, Inc., f/k/a Avondale**
**Industries, Inc., f/k/a Avondale Shipyards, Inc., f/k/a Avondale Marine Ways, Inc.)**

28.     Plaintiff asserts a negligence and strict liability action against defendant Avondale based upon the acts and omissions of defendant or those for whom the defendants are responsible, and are specifically not based upon any act committed at the direction of the United States Government or any of its officers or agents.

29.     Avondale is responsible for the conduct of those individuals and companies working on their premises with asbestos products, which created an unsafe work environment, which resulted in exposure to asbestos to Plaintiff and which resulted in the injury of Plaintiff for which defendants are liable under Louisiana law.

30.     Avondale failed to provide a safe place in which to work free from the hazards of asbestos, which failure was a proximate cause of Plaintiff's injuries.  Plaintiff's causes of action are based upon the acts and omissions of defendants or those for whom the defendants are responsible, and are specifically not based upon any act committed at the direction of the United States Government.

31.     Avondale negligently, recklessly, willfully and/or because of gross and wanton negligence, or fault, failed to properly discharge its duties to Plaintiff's father and Plaintiff in the following particulars: (a) failure to provide Plaintiff's father with a safe place to work; (b) failure to provide Plaintiff's father with adequate engineering or industrial hygiene measures to control the level of exposure to asbestos, including but not limited to local exhaust, general ventilation, respiratory protection, segregation of work involving asbestos, use of wet methods to reduce the release of asbestos into the ambient air, medical monitoring, air monitoring, and procedures to prevent the transportation of asbestos fibers home on Plaintiff's father's clothing; and (c) failure to inform or warn Plaintiff's father of the hazards of asbestos exposure.

32.     These specific acts of fault were a substantial contributing factor of Plaintiff's injuries.

33.     Plaintiff was exposed to asbestos-contaminated clothing carried home from Avondale Shipyards at various times from approximately the 1950's through the 1970's.  Additionally, Plaintiff was exposed to asbestos from laundering and contacting the asbestos contaminated clothing carried home from her father brothers, and husband mentioned above.  Plaintiff's exposure to asbestos products occurred without fault on her part.  Plaintiff alleges that Avondale is liable for Plaintiff's injuries, as alleged, arising out of the negligent conduct of Avondale as

detailed herein, and, in failing to provide a safe place in which to work free from the dangers of respirable asbestos-containing dust.

34.     As a direct and proximate contributing result of having inhaled, ingested or otherwise having been exposed to asbestos from Avondale, Plaintiff has received injuries, both physically and mentally, including, without limitation, all of the ramifications of mesothelioma.

35.     Avondale negligently, recklessly, willfully and/or because of gross and wanton negligence or fault, failed to properly discharge their duties to the Plaintiff in the following: (a) failed to provide a safe work environment; (b) failed to provide safety equipment; (c) failed to provide the correct, adequate, or proper safety equipment; (d) recklessly and negligently failed to disclose, warn or reveal critical medical and safety information to workers regarding asbestos hazards in general and with regard to those specific hazards at the work site; (e) recklessly concealed and negligently omitted to reveal critical medical and safety information from workers regarding the safety and health risks associated with the asbestos and asbestos-containing products at the worksites; (f) failed to timely remove asbestos hazards from the work place; (g) failed to properly supervise or monitor the work areas for compliance with safety regulations; (h) failed to provide a safe and suitable means of eliminating the amount of asbestos dust in the air; and (i) failed to provide the necessary facilities, practices and procedures that would lessen or eliminate the transfer of asbestos from the workplace to the home on the clothing and/or person of workers which ultimately exposed Plaintiff.

36.     The above-described negligence, fault, and willful misconduct of Avondale was a proximate cause of Plaintiff's injuries.

37.     At all times throughout Plaintiff's exposures, asbestos was present and used within Avondale' facilities, and subsequent exposures to Plaintiff, Avondale knew that asbestos posed substantial health risks to those exposed to it, knew that there were specific engineering and industrial hygiene procedures which should have been employed to reduce exposures, knew that those exposed to asbestos on the job could bring home asbestos on their clothes and thereby injuriously expose those in the household, yet the Shipyards chose not to inform Plaintiff of this information or implement any meaningful safety precautions, all of which was a substantial contributing cause of Plaintiff's injuries.

38.     Avondale is liable to Plaintiff for their failure to exercise reasonable care to protect Plaintiff from the foreseeable dangers associated with exposure to asbestos.  Avondale, as the premises

operator and/or manager and/or owner and occupier, and/or custodian, had a non-delegable duty to keep the premises safe for invitees. Avondale knew or should have known of the unreasonable risk of harm inherent in exposure to asbestos and asbestos-containing materials but failed to protect Plaintiff from said risk of harm. Avondale's failure to protect Plaintiff from known and/or foreseeable dangers constitutes negligence. Said negligence and strict liability was a proximate cause of Plaintiff's asbestos-related injuries and damages.

## STRICT LIABILITY AND NEGLIGENCE OF PREMISE OWNER

39.     Huntington Ingalls Incorporated (f/k/a Avondale Shipyards) is liable for Plaintiff's injuries caused by its fault, in the form of strict liability and/or negligence as detailed herein, and in failing to provide Plaintiff with a safe place to work free from the dangers of respirable asbestos-containing dust, which Plaintiff was subsequently exposed to.

40.     The Premise Defendants are liable to the Plaintiff for the damages described in this Petition for the following acts of negligence while Plaintiff was working within its work site:

     A.     Failing to provide respiratory protection to the Plaintiff;

     B.     Failing to provide safety equipment to Plaintiff;

     C.     Failure to provide general ventilation in Plaintiff's work areas;

     D.     Failing to provide local exhaust in Plaintiff's work areas;

     E.     Failing to provide air free from airborne asbestos fibers in Plaintiff's areas;

     F.     Failing to provide Plaintiff with proper medical monitoring;

     G.     Failing to educate Plaintiff of the hazards of asbestos;

     H.     Failing to post warning or caution signs regarding the hazards of asbestos;

     I.     Failing to implement wet methods to control the level of airborne asbestos fibers in Plaintiff's work areas;

     J.     Failing to implement the use of asbestos-free materials; and

     K.     Inducing Plaintiff work in areas polluted with respirable asbestos fibers.

41.     As a direct result of the aforementioned acts, Plaintiff inhaled, and otherwise ingested asbestos fibers carried home from Avondale Shipyards.

42.     During the course of the Plaintiff's family members work, Plaintiff was exposed to asbestos and/or asbestos containing products, which were in the care, control and custody of these defendants. Because of the extreme hazard it poses to humans, asbestos constitutes a defect or vice in the products to which Plaintiff was exposed, which defect or vice was a cause in fact of

Plaintiff's injuries described herein. Accordingly, these defendants are strictly liable to Plaintiff in accordance with Louisiana Civil Code article 2315 and 2317.

43.     Plaintiff was exposed to asbestos released from these premises, which release was a cause in fact of Plaintiff's injuries described herein. Accordingly, The Premise Defendant is strictly liable to Plaintiff in accordance with, but not limited to, Louisiana Civil Code article 2315, former Louisiana Civil Code articles 660 and 669, and *Langlois v. Allied Chemical Corp*, 249 So.2d 133 (La. 1971).

44.     The Premise Defendant knew or should have known that asbestos posed a hazard to humans and that there were specific engineering and industrial hygiene controls that could help reduce the levels of airborne asbestos fibers, nonetheless failed or suppressed, through silence, neglect or inaction, the truth regarding asbestos and Plaintiff so as to obtain an unjust advantage for themselves over and at expense of Plaintiff or to cause loss or inconvenience to Plaintiff. This action or inaction by the defendants was a direct and proximate cause of the damages described herein.

## DAMAGES

45.     The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from asbestos-related mesothelioma of the Petitioner, and of the following general and special damages including:

    A.     The conscious physical pain and suffering and mental anguish sustained by Petitioner (past, present and future);

    B.     The disfigurement suffered by Petitioner;

    C.     The physical impairment suffered by Petitioner (past, present and future);

    D.     Reasonable and necessary medical expenses incurred by Petitioner;

    E.     All past, present and future lost earnings and loss of earning capacity;

    F.     Loss of quality of life;

    G.     All forms of relief or categories of damages allowed by Louisiana law against parties the law allows such claims to be alleged against, with interest from the date of injury until paid, plus costs of these proceedings.

    **WHEREFORE,** Petitioner demands judgment against the Defendants, and each of them, jointly, severally and/or in solido for all damages, for their costs expended herein, for judicial

interest from the date of judicial demand, and for such other and further relief, both at law and in

equity, to which Petitioner may show herself justly entitled.

Respectfully submitted,

**BARON & BUDD, P.C.**
2600 CitiPlace Drive
Suite 400
Baton Rouge, LA  70808
Tel:  (225) 927-5441
Fax:  (225) 927-5449

By:_____
David R. Cannella (Bar Roll No. 26231)
Christopher C. Colley (Bar Roll No. 30322)
Kristopher L. Thompson (Bar Roll No. 37898)
Benjamin D. Rumph, LA Bar No. 37851

**ATTORNEYS FOR PLAINTIFFS**

13

**PLEASE SERVE THE FOLLOWING DEFENDANTS WITH A COPY OF PLAINTIFF'S PETITION FOR DAMAGES:**

1. **HOPEMAN BROTHERS, INC.**
   **Via the Louisiana Long Arm Statute:**
   435 Essex Ave.
   Waynesboro, VA 22980

2. **HUNTINGTON INGALLS INCORPORATED**
   Through its agent for service:
   CT Corporation System
   3867 Plaza Tower Drive
   Baton Rouge, LA 70816

3. **TAYLOR-SEIDENBACH, INC.**
   Through its agent for service:
   Robert I. Shepard or Hal Shepard
   731 S. Scott Street
   New Orleans, LA 70119

4. **UNION CARBIDE CORPORATION**
   Through its agent for service:
   CT Corporation System
   3867 Plaza Tower Drive
   Baton Rouge, LA  70816

5. **FOSTER WHEELER ENERGY CORPORATION**
   Through its agent for service:
   United Agent Group, Inc.
   1070-B West Causeway Approach
   Mandeville, LA  70471

6. **GENERAL ELECTRIC COMPANY**
   Through its agent for service:
   CT Corporation System
   3867 Plaza Tower Drive
   Baton Rouge, LA 70816

7. **INTERNATIONAL PAPER COMPANY**
   Through its agent for service:
   CT Corporation System
   3867 Plaza Tower Drive
   Baton Rouge, LA 70816

8. **LIBERTY MUTUAL INSURANCE COMPANY**
   Through its agent for service:
   Louisiana Secretary of State
   8585 Archives Avenue
   Baton Rouge, LA 70809

9. **CBS CORPORATION**
   Pursuant to the Louisiana Long Arm Statute:
   51 West 52ND Street
   New York, NY  10019