CIVIL DISTRICT COURT

PARISH OF ORLEANS

STATE OF LOUISIANA

VELMA LEE THOMPSON        *   NO. 2021-7432
                          *
VERSUS                    *   DIVISION "B"
                          *
HUNTINGTON INGALLS         *
INCORPORATED, ET AL.      *
                          *
************************

    Videotaped Deposition of VELMA LEE THOMPSON, taken for all lawful purposes in accordance with the provisions of the Louisiana Code of Civil Procedure, Article 1437, et seq., including trial purposes, taken at the offices of Baron & Budd, 909 Poydras Street, Suite 2100, New Orleans, Louisiana, on the 22nd day of April, 2022.

Videographed By:

    Mark Ancalade

Reported By:

    Diana S. Ezell, CCR, RPR, RMR
    Certified Court Reporter

EXHIBIT B

1    Q.   Other than the fact that Mr. Gralyn
2 worked at Avondale Shipyard, do you know any other
3 information like ships that he worked on?
4        DEFENSE COUNSEL:
5             Object to the form.
6    **A.   No.**
7 BY MR. CANNELLA:
8    Q.   Do you know the types of products that
9 he worked with?
10   **A.   No, I don't.**
11       DEFENSE COUNSEL:
12            Object to form.
13 BY MR. CANNELLA:
14   Q.   Did Gralyn Ancar wear his Avondale
15 Shipyard work clothes home?
16   **A.   Yes, he did.**
17   Q.   What was the condition or what did the
18 clothes look like when he returned home after
19 work?
20   **A.   Dirty, dusty.**
21   Q.   Did you do the laundry that included
22 Gralyn Ancar's work clothes from Avondale?
23   **A.   Yes, I did.**
24   Q.   Did you have a washing machine?
25   **A.   Yes.**

Page 9

1   Q.   So I'm going to start with the questions
2   about your personal information and background.
3   So what is your date of birth?
4       A.   June 29th, 1954.
5   Q.   Where do you currently live?
6       A.   1708 S. Rampart.
7   Q.   Who was your mom and dad?
8       A.   Seymore Thompson and Johnny Thompson.
9   Q.   Do you know what your mom and dad --
10  what did they do for a living?
11      A.   My mother was a stay-at-home mom.  My
12  father, he worked laying tiles.
13  Q.   Are either of your parents still alive?
14      A.   No.  They are both deceased.
15  Q.   Do you have any brothers or sisters?
16      A.   Yes, I do.
17  Q.   Can you name them for me?
18      A.   My sister, Linda White; Imogene Simons;
19  Patricia Thompson; my brother, Tyrone Thompson;
20  and I have three brothers that's deceased, Johnny
21  Coleman, Rudolph Thompson, and Larry Thompson.
22  Q.   Have you ever been married?
23      A.   Yes.
24  Q.   How many times?
25      A.   Once.

```
 1  BY MR. CANNELLA:
 2      Q.   Could you see the dust with your eyes?
 3      A.   Yes, I could.
 4      Q.   Where did the dust come from?
 5  DEFENSE COUNSEL:
 6           Object to the form.
 7      A.   The clothes.
 8  BY MR. CANNELLA:
 9      Q.   Did you breathe the dust that came from
10  the clothes when you shook them out?
11      A.   Yes, I did.
12      Q.   Now I'm going to ask you some questions
13  about Johnny Coleman, the same type of questions.
14  Were you living with Johnny Coleman, your brother,
15  when he worked at Avondale Shipyard?
16      A.   Yes.
17      Q.   Do you recall or remember that
18  Mr. Johnny worked at Avondale Shipyard?
19      A.   Yes.
20      Q.   Other than the fact that Mr. Johnny
21  worked at Avondale, do you know any information
22  about like the types of ships he worked on?
23      A.   No.
24      Q.   Do you know the places at Avondale
25  Shipyard where he worked?
```

Page 14

1     **A.    No.**
2     Q.    Did Johnny Coleman wear his Avondale
3     work clothes home?
4     **A.    Yes, he did.**
5     Q.    What was the condition or what did the
6     work clothes look like when he came home?
7     **A.    Dirty, dusty.**
8     Q.    Did you do the laundry that included
9     Johnny Coleman's Avondale work clothes?
10    **A.    Yes, I did.**
11    Q.    What, if anything, did you do with
12    Johnny Coleman's work clothes from Avondale
13    Shipyard before putting them into the washing
14    machine?
15    **A.    Checked the pockets, shake them out.**
16    Q.    What would happen to the air, if
17    anything, around you when you would shake out and
18    look in the pockets of Johnny Coleman's work
19    clothes?
20    **A.    Dusty.**
21    Q.    Could you see the dust?
22    **A.    Yes.**
23    Q.    Where did the dust come from?
24    DEFENSE COUNSEL:
25           Object to the form.

Page 21

1  Exhibit No. 3 and there's a photograph of his
2  gravestone and it indicates a birth of 22 May '51
3  and a date of death of 1 February '98.
4      **A.   Yes.**
5      Q.   That's actually spelled incorrectly,
6  isn't it?
7      **A.   Yes, it is.**
8      Q.   On the tombstone, it's G-R-A-Y-L-Y-N,
9  but that's not how you spell it, right?
10     **A.   No.**
11     MR. CANNELLA:
12         So we'll mark that as Exhibit No. 3.
13 BY MR. CANNELLA:
14     Q.   Was that Mr. Gralyn's date of birth?
15     **A.   Yes, it was.**
16     Q.   One of the things that you and I spoke
17 about earlier was your brother Johnny Coleman.  Do
18 you remember answering some questions about your
19 brother Johnny Coleman?
20     **A.   Yes.**
21     Q.   Are you aware -- and I'm not asking you
22 details, but are you aware that Mr. Coleman had a
23 claim for asbestosis?
24     **A.   Yes.**
25     DEFENSE COUNSEL:

1         Object to the form.
2    BY MR. CANNELLA:
3         Q.   I'm going to mark as Exhibit No. 4 and
4    I'm going to show you a document.  Right here it
5    says "Verification" up top and it's signed by
6    Johnny Coleman, and it indicates that Johnny
7    Coleman -- so, first of all, is that Johnny
8    Coleman your brother?
9         **A.   Yes, it is.**
10        Q.   And it indicates on a Work History Sheet
11   that a Johnny Coleman worked at Avondale Shipyards
12   in '70 and '71 intermittently as a laborer.  My
13   question to you is is that consistent with your
14   personal observation and memory about your brother
15   working at Avondale?
16        **A.   Yes.**
17        MR. CANNELLA:
18             So we will mark the Verification of
19   Johnny Coleman as Exhibit 4.
20        MR. BELL:
21             David, I hate to interrupt you.  You
22   said that Exhibit 4 is the Verification.  Is it
23   going to also include everything attached to it?
24        MR. CANNELLA:
25             Yes.  I'm sorry.  Yes.  Thank you,

Page 40

1  try very hard not to ask those same questions.  If
2  I seem to be jumping around a little bit, I
3  apologize.  I'm just trying very hard to respect
4  your time and not waste it this morning.  Is that
5  okay?
6       **A.   That's fine.**
7       Q.   All right.  I believe you said earlier
8  you were married just the once to Mr. Ancar; is
9  that correct?
10      **A.   Correct.**
11      Q.   So after that divorce, you never
12  remarried?
13      **A.   No.**
14      Q.   And the children you told us about, Ms.
15  Toshiba, Ms. Dionne and Mr. Allen, those are your
16  only three children, correct?
17      **A.   Yes.**
18      Q.   Now, you said your father's name was
19  Johnny Thompson, correct?
20      **A.   Correct.**
21      Q.   And I know Mr. Cannella asked you.  What
22  did Mr. Thompson, your father, do for a living?
23      **A.   He laid tiles.**
24      Q.   Laid tile?
25      **A.   Yeah.**

Page 57

1     **A.   I was.**
2     Q.   You were?  Okay.  And did you do
3  everyone's laundry in the house?
4     **A.   Yes.**
5     Q.   Was there a washing machine inside the
6  house at Rotunda?
7     **A.   Yes.  There was a washing machine.**
8     Q.   And where was that washing machine?  Was
9  it in a separate laundry room or in the kitchen?
10    **A.   It was in the garage.**
11    Q.   Now, again, just to make sure that I'm
12 clear, your attorney asked you a question about
13 this, but I want to make sure I understood your
14 answer properly.  You have no idea what equipment
15 or tools or products or anything like that your
16 brother Johnny Coleman would have used or come
17 into contact with during his work at Avondale;
18 isn't that right?
19    **A.   Right.**
20    Q.   Now, I think you said before you
21 believed that your brother Larry worked at
22 Avondale as well?
23    **A.   Yes.**
24    Q.   Do you know if you can recall when he
25 started at Avondale?

1    **A. No.**

2    Q. That's not someone who would have been
3 living in the house with you during that time; is
4 that right?

5    **A. He was there too.**

6    Q. At Rotunda Drive in Westwego?

7    **A. Yes.**

8    Q. Do you have any idea if that's the time
9 period when he was working at Avondale, though?

10    **A. I believe so.**

11    Q. Okay. And, unfortunately, he's deceased
12 as well; is that right?

13    **A. Yes.**

14    Q. Do you know his cause of death?

15    **A. A head-on collision, a car accident.**

16    Q. And when was that?

17    **A. 1980.**

18    Q. Did Larry ever serve time in the
19 military?

20    **A. No.**

21    Q. Do you know where Larry worked at any
22 time during his career other than Avondale?

23    **A. (Shaking head negatively).**

24    Q. Is that a no?

25    **A. No. I don't know. I don't know the**

1  name of the places.  He done worked other places.
2  I just don't know the name of them.
3      Q.   What type of work was it when he wasn't
4  working at Avondale?
5      A.   Truck driver.
6      Q.   Truck driving?  Do you know what Larry
7  Thompson, your brother, did when he worked at
8  Avondale?
9      A.   No.
10     Q.   Any idea what his job title was at
11 Avondale?
12     A.   No.
13     Q.   Do you know whether he ever worked on
14 ships or vessels as opposed to working out in the
15 yard at Avondale?
16     A.   No.
17     Q.   That's just not something that you
18 talked about with them when they would come home
19 from work; is that right?
20     A.   No.
21     Q.   When your brother Larry Thompson would
22 come home from work at Avondale, how would you
23 describe the way he looked?
24     A.   Dirty.
25     Q.   Do you have any idea if Larry and Johnny

Page 60

1   worked together or in the same crew when they were
2   working at Avondale?
3         **A.   That I don't know.**
4         Q.   You don't know.  Okay.  If Larry
5   Thompson came home from Avondale looking dirty,
6   you don't know what that dirt or dust actually
7   came from at Avondale, correct?
8         **A.   No.**
9         Q.   Did your brothers, Larry and/or Johnny,
10  ever actually say to you that they were working
11  with some sort of equipment or product or material
12  that contained asbestos?
13        **A.   No.  I don't think they knew what it was**
14  **at the time.**
15        Q.   Okay.  Do you know one way or another as
16  we sit here today whether either Johnny Coleman or
17  Larry Thompson actually worked with
18  asbestos-containing materials during their
19  Avondale work?
20        **A.   I don't believe they knew.**
21        Q.   And you don't know one way or the other
22  today personally?
23        **A.   No.  No.**
24        Q.   And since you've never been to Avondale,
25  you never visited Larry during his time working at

1       A.   No.
2       Q.   You don't know what that is?
3       A.   No.
4       Q.   Do you know if anyone in your family has
5  submitted any claims with any bankruptcy trusts or
6  similar entities alleging asbestos exposure?
7       A.   No.
8       Q.   Ma'am, have you ever given a deposition
9  like this before today?
10      A.   No.
11      Q.   Have you ever been a witness in somebody
12 else's case where you've had to provide testimony
13 or an affidavit or something of that nature?
14      A.   No.
15      Q.   Other than some sort of like traffic
16 issue, have you ever been convicted of a crime?
17      A.   No.
18      MR. CANNELLA:
19           Object to the form.
20 BY MR. SAUNDERS:
21      Q.   In an effort to save time, ma'am, I'm
22 going to make sure that I understood your earlier
23 testimony which may allow me to skip a lot of
24 this.  Your father, it's your understanding, never
25 worked at Avondale and as a career he laid tile,

1  correct?
2      A.   Correct.
3      Q.   And your brothers, Johnny Coleman and
4  Larry Thompson, you believe they worked at
5  Avondale but you don't recall anything specific
6  they did for a living other than that, correct?
7      A.   No.
8      Q.   You don't remember the names of their
9  employers or things like that --
10     A.   No, I don't.
11     Q.   -- other than one of them was a truck
12 driver for a little while, right?
13     A.   Yes.  My brother Larry.
14     Q.   What did Mr. Ancar do for a living other
15 than the short time at Avondale?  You told me he
16 worked at Coca-Cola, correct?
17     A.   Yeah.  And he drove a cab.
18     Q.   Do you have any information, as we sit
19 here today, that would indicate to you that any of
20 those individuals were exposed to asbestos at any
21 of those other jobs?
22     A.   No.
23     Q.   You just don't know one way or the
24 other, right?
25     A.   No, I don't.

1    Q.   Okay.  You all got married in Westwego,
2  in the Westwego residence?
3    **A.   Right.**
4    Q.   Okay.  You said that he was only using
5  the Erato Street address at the time.
6    **A.   Right.**
7    Q.   But he wasn't using the Rotunda address
8  at that time?
9    **A.   Right.**
10   Q.   Okay.  The record is going to speak for
11 itself in terms of when you started washing his
12 clothes and that kind of stuff.  Okay?  So I'll
13 leave that alone, but based upon these records, he
14 didn't work at Avondale for a long time, correct?
15   **A.   How long?**
16   Q.   Mr. Ancar.
17   **A.   It was a couple of months.**
18   Q.   A couple of months?  And these records
19 indicate that he started working there March 3rd,
20 1970, as a general helper, and he was discharged
21 April the 21st, 1970.  Do you have any reason to
22 disbelieve that or disagree with it?
23   **A.   I don't remember really.**
24   Q.   And I understand we are going back a
25 long time, right?  Would you disagree with the

1  fact that he worked on the night shift when he
2  worked at Avondale?
3      **A.   I believe it was day.**
4      Q.   Okay.  Let me ask it this way.  Would
5  you disagree with his personnel records that
6  indicate that he worked the night shift at
7  Avondale?
8      MR. CANNELLA:
9          Objection because whatever you are
10 representing is in the employment file which we
11 just got together.  She has not reviewed it.
12     MR. BELL:
13         That's why I have it.  If we could, turn
14 to -- let me make sure I get this page.  It should
15 be the last page, David.  Thank you.
16 BY MR. BELL:
17     Q.   Now, Ms. Thompson, if you read this,
18 this is a part of his record, and it indicates
19 that he was injured on the job and the time is
20 1:00 a.m.  Do you disagree with that time period?
21     **A.   I don't remember.**
22     Q.   Okay.  That's fine.  That's fine.
23     MR. BELL:
24         What I would like to do is attach this
25 as Exhibit 9.

```
 1              C E R T I F I C A T E
 2         This certification is valid only for a
    transcript accompanied by my original signature
 3  and original required seal on this page.
 4         I, Diana S. Ezell, Certified Court
    Reporter, Registered Professional Reporter,
 5  Registered Merit Reporter, in and for the State of
    Louisiana, as the officer before whom this
 6  testimony was taken, do hereby certify that Velma
    Lee Thompson, after having been duly sworn by me
 7  upon authority of R.S. 37:2554, did testify as
    hereinbefore set forth in the foregoing 115 pages;
 8  that this testimony was reported by me in the
    stenotype reporting method, was prepared and
 9  transcribed by me or under my personal direction
    and supervision, and is a true and correct
10  transcript to the best of my ability and
    understanding; that the transcript has been
11  prepared in compliance with transcript format
    guidelines required by statute or by rules of the
12  board;
           That I am informed about the complete
13  arrangement, financial or otherwise, with the
    person or entity making arrangements for
14  deposition services; that I have acted in
    compliance with the prohibition on contractual
15  relationships, as defined by Louisiana Code of
    Civil Procedure Article 1434 and in rules and
16  advisory opinions of the board; that I have no
    actual knowledge of any prohibited employment or
17  contractual relationship, direct or indirect,
    between a court reporting firm and any party
18  litigant in this matter, nor is there any such
    relationship between myself and a party litigant
19  in this matter;
           That I am not related to counsel or to the
20  parties herein, nor am I otherwise interested in
    the outcome of this matter.
21         This 5th day of May, 2022, at New Orleans,
    Louisiana.
22
23                 _____
24                 DIANA S. EZELL, CCR, RPR, RMR
                   CERTIFIED COURT REPORTER #85142
25
```